# JUNE TERM, 1918.*

## TUTTLE v. DOTY.

1. DEEDS—REFORMATION OF INSTRUMENTS.
   On a bill to reform and correct a deed from plaintiff to her daughter, the decree of the court below excepting from the operation of said deed the interest of a grandson, in which grantor had only a life estate, will be affirmed, on appeal.

2. SAME—DELIVERY—VALIDITY.
   As to the interest of grantor to which she had an absolute title, evidence *held*, to establish by a clear preponderance, that the deed was knowingly made and its delivery authorized by grantor, and therefore valid.

3. GIFTS—MISTAKE—CONSIDERATION.
   Where certain certificates of stock were given by plaintiff to her daughter without any consideration, and both were proceeding upon the theory that they had been stolen by a grandson of plaintiff, which later proved to be unfounded, the decree of the court below ordering the surrender of said certificates will be affirmed.

Appeal from Kent; Searl, J., presiding. Submitted April 23, 1918. (Docket No. 58.) Decided September 27, 1918.

Bill by S. Porter Tuttle, executor of the last will of Mary G. Pearsall, deceased, against Fannie E. Doty, individually and as special administratrix of the estate of Payson M. Doty, deceased, to set aside a deed and to enjoin the disposition of certain corporate stock. From the decree rendered, all parties appeal. Affirmed.

*Continued from Vol. 202.

*Taggart & Kingston (E. A. Maher,* of counsel), for plaintiff.

*Charles E. Ward,* for defendants.

MOORE, J. The trial judge stated in a written opinion filed by him the question involved in this litigation as follows:

"In the first of the above entitled cases, complainant filed her bill in her individual capacity praying that a certain deed purporting to have been executed by her on January 23d, 1899, to defendant Fannie E. Doty be set aside and also for an injunction against both defendants preventing them from disposing of certain bank stocks and telephone stocks which had disappeared and which she charged were wrongfully in the possession of said defendants.

"An amendment to this bill subsequently filed charges that defendant Fannie claimed to have certain written transfers of said stock and that complainant had no knowledge of ever having executed the same, but that if she did, it was because of undue influence and fraud and conspiracy upon the part of the said defendants.

"To this bill defendants answered that said deed was made voluntarily and delivered to defendant Fannie and denying all charges of fraud, undue influence and conspiracy and alleging that the tangible evidence of ownership of said stock was in the hands of said defendant Fannie.

"The issue thus made came on to be heard before the court and after said hearing and before decision thereon it was stipulated that the two cases should be heard together and thereafter testimony was taken in the other case.

"In this latter case complainant who filed her bill in her individual capacity and as executrix of the estate of Orlando K. Pearsall, charged substantially the same facts as in her former bill and addition thereto other fraudulent acts upon the part of defendants Payson M. and Fannie E. Doty, and also named as defendants Orland H. Pearsall and Harvey E. Hill and Sarah E. Hill.

"In the last case a supplemental bill was afterwards filed by complainant, answers were filed by defendants, Payson M. and Fannie E. Doty,. and Orland H. Pearsall, and a cross-bill and a supplemental cross-bill filed by Orland H. Pearsall to which answers. were also filed. The defendants Harvey E. and Sarah E. Hill, disclaimed any interest in the property and no claim is made that they have any.

"In the first case complainant sets up that she had made another deed to her daughter Fannie E. Doty covering what is known as the property on Smith's Addition, but she did not in that case ask to have that deed set aside or annulled in any way. But in the last case she charges that this deed was made under a mistaken notion upon her part that it was her duty to pay all of a certain paving tax, whereas she being a life tenant as to one-half the property it was her duty to pay half only of said tax and that the deed was made in order to raise money to pay said tax and she prays that an accounting may be had of the moneys paid by the Dotys on account of said taxes and of the rents received by them and that this deed also may be set aside.

"Orland H. Pearsall, admitting all the allegations of complainant's bill, prays in his cross-bill for the same relief as to his interest and for the removal of his mother, Fannie E., as trustee under the will of Orlando K. Pearsall and for relief as to his interest in such of the stocks as belonged to the estate.

"Complainant, an old lady of the age of 89 years, is the widow of Orlando K. Pearsall, who died May 9, 1891, leaving a will by which he disposed of all of the property involved in these cases except certain of the stocks which belonged to the complainant in her own right. This will provided that his entire estate, real and personal, should be disposed of as follows: One-half to his widow absolutely and the use of the other half during her lifetime; and after the death of the widow the daughter, Fannie E. Doty, to receive one-half of this remainder, being one-quarter of the estate, absolutely, and the other quarter of the estate to be held in trust by Fannie E. for the use and benefit of Orland H., a son of Fannie E. by a former marriage, for and during his life, and after

his death to go to his children or grandchildren, if any, and if none, then to his mother, if living, and if not, then to her children or grandchildren, if any, and if none, then to the then living brothers and sisters of the testator.

"The will named the widow as executrix and one John T. Gould (since deceased) as executor and empowered them to sell and convert into money all of said real and personal property in order that the widow might enjoy the income therefrom.

"In disposing of the questions presented, it will be necessary to consider the case first as to the property owned individually by complainant and second that which still remained as part of the estate.

"As to the stocks owned by complainant in her own right and as to her half of the other stocks and of the real estate coming to her absolutely under the will, she had full power of disposal and if she voluntarily and without exercise of undue influence or fraud gave it away and made such delivery of the deed and evidences of title as are sufficient in law, then she cannot be heard to complain in a court of equity.

"The evidence shows that some time prior to the making of any of these deeds and other papers the complainant became alarmed because of the fact that a book agent had secured her signature to some paper which she thought might turn out to be a note or a paper upon which some claim could be made against her property, and while there is no evidence to warrant the conclusion that the book agent transaction was the result of a plot to so work upon the mind of this old lady as to bring about the first conveyance to the daughter, yet in view of many other peculiar things which afterwards happened, there is at least a chance for a strong suspicion to that effect. But courts cannot decide cases on suspicions, and in this case the evidence shows that this old lady while mentally competent, and shrewd beyond the average woman of her years, voluntarily executed the first deed after being cautioned by Mr. Hamilton not to do so because of any danger from any signature of hers secured by the book agent; that she did not at the time make any delivery of it beyond recall and that afterwards she voluntarily ordered Hamilton, in whose

custody it had been left, to deliver it to her daughter, Fannie E. Doty. The deed was read over to her and she fully understood its contents. She retained the use of the property during her lifetime and being then on friendly terms with her daughter placed the title to it exactly where she then declared she wanted it to go. As to this conveyance so far as it affects her individual interest, relief will be denied to complainant.

"But she never ordered the bill of sale to be delivered and the circumstances under which the transfer of the stock was made are such that I think a court of equity could grant relief. It is quite evident that complainant would not have given over this stock to her daughter except for the fact that she believed that it had been stolen from her by the grandson. This the daughter knew."

We find in the record but one decree. It reads in part as follows:

"This court by virtue of the authority therein vested doth order, adjudge and decree that the certain deed of conveyance bearing date of the 6th day of December, A. D. 1898, and which was recorded in the office of the register of deeds for the county of Kent, on the 18th day of January, A. D. 1909, in liber 371 of deeds, on page 613, be so corrected and reformed as to except and reserve from the operations of said deed, the use, rents and profits of the premises therein described, during the lifetime of said complainant. * * *

"It is further ordered, adjudged, and decreed that said deed of conveyance and the record thereof be further reformed and corrected so that the same shall apply to and operate as a conveyance only of the remainder in fee of an equal undivided one-half of the premises above described after the expiration of the life estate of said Mary G. Pearsall in said premises, such equal undivided one-half of said premises being that portion of the same given to said Mary G. Pearsall by the second clause of the will of Orlando K. Pearsall, deceased, in the following terms, viz.: * * * Except as above decreed the title of Fanny E. Doty under said deed is hereby confirmed to an equal undi-

vided one-half interest in fee of said premises, subject to the life estate of Mary G. Pearsall therein as aforesaid.

"It is further ordered, adjudged and decreed that the defendant Fannie E. Doty deliver and surrender up to the complainant Mary G. Pearsall * * * certificate No. 1538, issued by the Citizens' Telephone Company of Grand Rapids, Michigan, for 100 shares of $10 each; certificate No. 685 issued by the Grand Rapids National City Bank to said complainant for ten shares of $100 each of its capital stock, said complainant being the sole owner thereof; also that said Fannie E. Doty deliver and surrender up to complainant, Mary G. Pearsall, as executrix of the will of Orlando K. Pearsall upon her filing with the probate court for Kent county a bond in the sum of $2,500 with sureties to be approved by the probate judge of said county certificate No. 75 for 15 shares of $100 each, and certificate No. 144 for five shares of $100 each issued by the Grand Rapids National City Bank to Orlando K. Pearsall."

Since the decree Mary G. Pearsall and Payson M. Doty have died. Their deaths have been suggested of record. Both parties appeal from the decree.

The will of Orlando K. Pearsall had the following provisions:

"*Second:* I give and devise, will and bequeath unto my said wife one undivided one-half of all the rest, residue and remainder of my estate, real, personal and mixed of every name, nature and description of which I may die seized or possessed, the same to be held and enjoyed by her and her heirs and representatives absolutely forever.

"*Third:* The remaining one-half of my said real and personal property I give, bequeath, will and devise unto my said wife, the same to be held and enjoyed by her for and during her natural life.

"*Fourth:* After the death of my said wife, I give and bequeath, will and devise, to my daughter Fannie E. Doty one undivided one-half of all the real and personal estate hereinbefore given to my said wife for and during the life of my said wife; the same to

be held by my said daughter absolutely and to her heirs and legal representatives forever.

"*Fifth:* After the death of my said wife, I give, devise and bequeath unto my said daughter the other undivided one-half of the real and personal estate hereinbefore given to my said wife during her life; the same to be held in trust by my said daughter for the use and benefit of my grandson Orland H. Pearsall, for and during his life, and after the death of my said grandson Orland H. Pearsall it is ·my will that said shares so as above said willed in trust to my said daughter, rest absolutely in the children or grandchildren of my said grandson." *    *    *

These provisions of the will are not ambiguous, and it is clear Mrs. Pearsall had no more right to attempt to alienate the interest of Orland H. Pearsall in his grandfather's estate than she would to alienate the interest therein of the daughter Fannie E. Doty, and the decree of the circuit judge in that regard is affirmed.

Did Mrs. Doty acquire by virtue of the paper that was executed in January, 1899, the interest Mrs. Pearsall had in the real estate given to Mrs. Pearsall by the will? This presents questions of fact. Mrs. Pearsall admits she signed a paper which was acknowledged before Charles S. Hilton, but denies she supposed it was a deed and she denies her signature to the deed which is in evidence and says that if it is her signature it was so folded when she signed it that she could not see that it was a deed. She admits on her cross-examination that the object of making the paper was to prevent the agent who had interviewed her and also Mr. Harper, the first husband of her daughter, from getting any interest in her property. She also testified that she signed but one paper which she acknowledged before Mr. Hilton. When Mrs. Pearsall testified she was past 80 and a number of years had intervened since she executed the paper before Mr.

Hilton. This may account for her testimony. The deposition of Mr. Hilton was taken in Seattle 12 years after the paper was acknowledged before him. At the time he gave his testimony he was 69 years of age. We quote from his testimony:

"When I arrived at Mrs. Pearsall's home, Mr. and Mrs. James L. Hamilton, neighbors of Mrs. Pearsall, were there. Then Mrs. Pearsall stated to me what the purport of this paper was in the presence of Mrs. Doty; that she was fearful that Mr. Harper, Mrs. Doty's former husband, would cause her some trouble and that she was making this agreement with her daughter, Mrs. Doty, to protect her and Orley Pearsall, her son, from Mr. Harper. I did not read over the paper that they wished to have me take acknowledgment of. Mrs. Pearsall had the paper in her hand while she was talking and referred to it while doing so. As I now remember it, the paper had been drawn up and was signed and witnessed before I saw it, and was in Mr. Hamilton's handwriting as far as I could see. I then took Mrs. Pearsall's acknowledgment to the paper in the presence of Mr. and Mrs. James L. Hamilton. I did not have the paper in my hands for the purpose of examining it and only had it long enough to take the acknowledgment. I could not see the whole of the contents of the paper signed by Mrs. Pearsall and acknowledged by her before me, as notary public. The paper was not unfolded except enough to enable me to see the signature of Mrs. Pearsall and the jurat or acknowledgment. I never saw the paper except at the time of taking the acknowledgment. After the paper was executed I sat down. A little general conversation followed. As I recollect, Mrs. Pearsall then stated that the paper which she had acknowledged was to be left in the hands of James L. Hamilton and not to be effective until Mrs. Pearsall's death. That Mr. Hamilton was not to deliver it to any one except in the presence of both Mrs. Pearsall and Mrs. Doty, and by their joint consent, nor unless both should be present and agree to it. From the conversation of both Mrs. Pearsall and Mrs. Doty at that time, I understood that the execution of this paper

by Mrs. Pearsall was not to affect Mrs. Pearsall's right, title or interest in the property mentioned in this paper and Mrs. Doty and Mrs. Pearsall each so stated. The paper was not read over to Mrs. Pearsall in my presence before she signed it. She was not very well at the time. She had been very sick but was recovering. She gave as one of her reasons for executing this paper, the fact that she was in poor health and thought best to attend to the matter. The paper was in Mrs. Pearsall's hands when I left the house."

The paper which Mrs. Pearsall acknowledged before Mr. Hilton was a warranty deed on a printed blank in common use and the certificate of acknowledgment signed by Mr. Hilton was in the usual form.

One of the witnesses to the deed was James L. Hamilton. His version is in part as follows:

"*A.* When we reached Mrs. Pearsall's she began telling me about her having signed a paper with some book agent, concerning which she seemed to be considerably worried; she thought they might turn up in some way as a note or something against her, and she said that she had these papers that she wished to execute for the purpose of shutting off or stopping any possible chance of her sustaining a loss in that direction and explained it in that way. I told Mrs. Pearsall at the time that if she was about to execute these papers in fear of any trouble that she would have on account of having signed something that she didn't exactly know what it was with the book agent, that I would certainly advise her not to sign it; and she replied that she wanted to sign them, it was carrying out her wishes in the matter and that this was only incidental. That, in substance, is the conversation.

"*Q.* In other words, that her wish, independent of this matter, was to have it this way?

"*A.* Yes. My advice to her was under no circumstances to sign those papers with any such thought in her mind, if that was the motive.

"*Q.* While Mr. Hilton was there, were you there when Mr. Hilton came?

"*A.* I was.

"*Q.* Was there any talk about this matter in Hilton's presence and hers?

"*A.* There was.

"*Q.* What was the talk there when Hilton was there?

"*A.* I recited to Mrs. Pearsall practically—or to Mr. Hilton practically the conversation between Mrs. Pearsall and I, and told him what my advice to Mrs. Pearsall was in the matter, and he says, 'That is right; there will not be one chance in a thousand of any difficulty.' * * *

"*Q.* What was done with these papers, take the will and the bill of sale and the deed, finally?

"*A.* They were given in my possession to be cared for, taken by me and put in my safe at the office.

"*Q.* Who gave them to you?

"*A.* Mrs. Pearsall.

"*Q.* Did she state any reason why she wanted you to take care of them rather than some one else?

"*A.* I don't think so. I guess it was mutually agreed that I should be the custodian of the papers.

"*Q.* You were to take them and take care of them?

"*A.* Yes.

"*Q.* Did you hear anything more from Mrs. Doty or Mrs. Pearsall about the papers for some time after that?

"*A.* Some time after that Mrs. Hamilton told me that Mrs. Doty had called her up on the telephone and wanted I should deliver to her the deed. I told Mrs. Hamilton that I would not deliver the deed to any one, to either party, without the consent of both parties and that before delivering the deed I would see Mrs. Pearsall and see that it was her wish I should do so.

"*Q.* Now what did you do about seeing Mrs. Pearsall?

"*A.* That night after dinner I went to Mrs. Pearsall's residence. She came to the door; I told her that Mrs. Doty had requested that I deliver to her the deed, and that I had told them that I would not do it without her consent, and asked her if it was agreeable to her that I do it and she said, 'Yes, let Fannie have the paper.' The next day—the paper remained in my safe; the next day I brought it home and delivered it to Mrs. Doty.

"*The Court:* Can you give the date of that?

"*Q.* You have stated there that Fannie wanted the deed delivered. You used the term 'deed'?

"*A.* Yes.

"*Q.* To distinguish it from the other paper?

"*A.* Yes.

"*Q.* Any question about that in your mind about speaking of it as a deed?

"*A.* No, sir; no question at all. I wanted Mrs. Pearsall to know what the paper was and I told her what it was."

Mrs. Hamilton corroborated the material parts of his testimony. Mrs. Pearsall says she authorized him to deliver to Mrs. Doty the paper that was acknowledged before Mr. Hilton, but that she did not then and never had supposed it was a deed.

The original papers are before us. The deed has a number of revenue stamps which are initialed by Mrs. Pearsall. An inspection of the papers and a careful reading of this voluminous record establishes by a clear preponderance of the evidence that Mrs. Pearsall made the deed in question, knowing what it was, and authorized its delivery to Mrs. Doty. We are also satisfied that when the deed was executed a life lease was given back to Mrs. Pearsall.

The will and bill of sale never passed out of the possession of Mr. Hamilton by direction of the parties, and no property interests were affected by them.

We come now to consider the stocks transaction. There is no doubt the conduct of Orland H. Pearsall greatly disturbed his grandmother. A diamond ring had been stolen, which he afterwards confessed he had taken. Other articles had disappeared. Mrs. Pearsall thought her stocks had been stolen by him. Mrs. Doty offered in evidence an exhibit which she says was written by her mother reading:

"GRAND RAPIDS, July 31, '06.

"I have had stolen from my desk in my home one $1,500 stock certificate No. 79, one $500 stock certificate No. 144 of the Grand Rapids National Bank, made

to my husband Orlando K. Pearsall; also one $1,000 certificate No. 685 of the same bank, made out in my own name, Mary G. Pearsall; one $1,000 stock certificate of the Citizens' Telephone Company. I had intended to give to my grandson Orland H. Pearsall, my personal bank stock $1,000; also my $1,000 of the telephone stock, but of late his conduct has been such I have changed my mind, and when these certificates are found I give them all to my daughter, Fannie E. Doty.

"Mary G. Pearsall."

The following exhibit was offered in evidence by Mrs. Doty:

"Grand Rapids, July 31, 1906.

"*Dear Mother:*

"You having today sold to me, love and affection and one dollar the consideration, certificate of stock 1538 of the Citizens' Telephone Company for $1,000; also certificates of stock No. 79 for $15,000; No. 144 for $500, No. 685 for $1,000 of the Grand Rapids National Bank, and Nos. 79 and 144 being in the name of my father, Orlando K. Pearsall, and No. 685 and 1538 being in your name, the above-mentioned certificates having been stolen from you, as soon as recovered or their duplicates are to be delivered to me; I hereby promise and agree to pay you during your lifetime any and all dividends that may be paid on such shares of stock for your personal use and benefit.

"Fannie E. Doty.
"To Mrs. Mary G. Pearsall.
"Accepted, Mary G. Pearsall."

Notices were given to the telephone company and the bank in which it was recited that the certificates had been stolen.

Mrs. Doty testified that she and her mother both supposed they had been stolen and the inference may be fairly drawn from her testimony that they thought Orland H. Pearsall had taken them. On or about July 31, 1906, Mrs. Pearsall procured a will in which she had given these certificates to Orland H. Pearsall

and the will was burned in the presence of Mrs. Pearsall and Mrs. Doty. As a matter of fact the certifi cates had not been stolen, but upon an occasion when Mrs. Pearsall was going to California for the winter she had delivered them for safe keeping to Mrs. Doty who put them in her private box in the bank. It is clear her mother had forgotten this and Mrs. Doty testified she had. Later Mrs. Doty found the certificates in her box and produced them on the trial. It is not to her credit that when she found them she did not inform her mother they had been found. Mrs. Doty paid nothing for these stocks, and if her testimony was true her mother and herself were both proceeding upon the theory that they had been stolen when they were given to her. The record indicates that if Mrs. Pearsall had known the facts she would have retained the certificates of stock.

The decree of the court below in regard to the stocks should be affirmed. In view of the fact that we find a life lease was given and the further fact that Mrs. Pearsall is dead, we think it unnecessary to discuss the question raised by counsel whether the trial judge could, as he attempted to do, reform the deed by incorporating therein a life lease. As both parties have appealed no costs in this court will be given to either of them.

The decree is affirmed.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.